# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TODD HOCH, | |
|        Plaintiff, | Case No.: 2:23-cv-00066-GMN-BNW |
|   vs. | |
| GAUGHAN SOUTH LLC, *et al.*, | **ORDER** |
|        Defendants. | |

       Pending before the Court is Plaintiff's Motion for Partial Summary Judgment, (ECF No. 49).  Defendant Gaughan South LLC d/b/a South Point Hotel and Casino ("South Point") filed a Response, (ECF No. 63), and Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Officer Pavlov (collectively "the LVMPD Defendants") also filed a Response, (ECF No. 66).  Plaintiff filed Replies (ECF Nos. 72, 73).

       Also pending before the Court is the LVMPD Defendants' Motion for Summary Judgment, (ECF No. 67).  Plaintiff filed a Response, (ECF No. 75).  Further pending before the Court is Defendant South Point's Motion for Summary Judgment, (ECF No. 68), to which the LVMPD Defendants joined, (ECF No. 71).  Plaintiff filed a Response, (ECF No. 76).

       Further pending before the Court is Plaintiff's Motion in Limine, (ECF No. 45).  Defendant South Point filed a Response, (ECF No. 52), to which the LVMPD Defendants joined, (ECF No. 55).  Plaintiff filed a Reply, (ECF No. 56).  Lastly pending before the Court is Plaintiff's Motion for Leave, (ECF No. 57), to file his Reply, (ECF No. 56).

       For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment, **GRANTS** the LVMPD Defendants' Motion for Summary Judgment, and **GRANTS** Defendant South Point's Motion for Summary Judgment.  And because the Court

finds that Plaintiff's Motion in Limine and the related Motion for Leave are premature, the Court **DENIES** the motions.[1]

## I.    BACKGROUND

This case arises from Plaintiff's seizure by Defendant South Point and Defendant Pavlov following his noncompliance with a statewide mask mandate in 2020 while at South Point Casino. (*See generally* Second Amend. Compl. ("SAC"), ECF No. 32).  The State of Nevada implemented a mask mandate for establishments, like Defendant South Point, during the Covid-19 pandemic.[2]  South Point was responsible for enforcing the mask mandate on its property. *Id.*  Security camera footage reveals that Plaintiff failed to comply with the mask mandate while on South Point's premises. (*See generally* South Point Security Camera Footage, Ex. A to South Point's Resp., manual filing).  Plaintiff is shown failing to keep his neck gator pulled up over his nose and mouth for most of the footage. (*See id.*, Ex. A to South Point's Resp.).  South Point employees warned Plaintiff that he was non-complaint with the mask mandate. (Hoch Decl. ¶ 6, Ex. 1 to Pl.'s Mot. Partial Summ. J. ("MPSJ"), ECF No. 49-1). Soon after the warning, a South Point casino employee told Plaintiff to "call it a night." (*Id.* ¶ 7, Ex. 1 to Pl.'s MPSJ)  Plaintiff got up to leave but then changed his mind and returned to the casino floor. (*Id.* ¶¶ 8–10, Ex. 1 to Pl.'s MPSJ).  South Point security staff then told Plaintiff to leave. (*Id.* ¶ 11, Ex. 1 to Pl.'s MPSJ).

---

[1] "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Motions in limine may be "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to *manage the course of trials*." *Id.* at 4 n.4 (emphasis added).  Here, no trial date has been set in this matter and the Court finds that a Motion in Limine is premature at this stage in the proceedings.
[2] *See Health & Safety Policies for Resumption of Operations*,
https://www.scribd.com/document/459806375/Health-and-Safety-Policy-for-the-Resumption-of-Gaming-OperationsNonrestrictedLicensees#from_embed&referrer=eater.com&sref=https://vegas.eater.com/2020/5/4/21246453/nightclubs-pool-parties-will-not-reopen-casinos-nevada-gaming-control-board-guidelines.

After security staff told Plaintiff to leave the premises, Plaintiff approached the cashier's cage. (*Id.* ¶ 12, Ex. 1 to Pl.'s MPSJ).  While at the cashier's cage, an encounter occurred between a security officer and Plaintiff where the security officer pointed towards the exit with a white trespass card in his hand. (South Point Security Camera Footage at "11-01-20 Security Officer takes out trespass card" Clip 1 #11386, Ex. A to South Point's Resp., manual filing).

Plaintiff maintains that the white trespass card was not read to him, and he was not given a trespass warning. (Hoch Decl. ¶¶ 7, 11, Ex. 1 to Pl.'s MPSJ).  Upon cashing his chips, Plaintiff proceeded to the elevators. (*Id.* ¶ 12, Ex. 1 to Pl.'s MPSJ).  Plaintiff made it all the way to the garage elevator inside the casino before he turned around and returned to the casino floor because he remembered his car was parked elsewhere. (*Id.* ¶¶ 12, 13, Ex. 1 to Pl.'s MPSJ). Plaintiff was instructed for the third time to leave and insisted on leaving out the main exit, despite being told to exit elsewhere by South Point security. (*Id.* ¶ 19(e), Ex. 1 to Pl.'s MPSJ).

As Plaintiff attempted to walk out of the casino, he and South Point security continuously engaged each other. (*Id.* ¶¶ 19–21, Ex. 1 to Pl.'s MPSJ).  A physical altercation took place between Plaintiff and a South Point security officer which resulted in a security officer handcuffing Plaintiff. (*Id.* ¶ 23).  Plaintiff was then led to a security holding cell and South Point contacted LVMPD indicating that they had an individual in custody for trespass. (*Id.,* Ex. 1 to Pl.'s MPSJ); (*See* Pavlov Dep. 46:7–10, Ex. C to LVMPD Defs.' Mot Summ. J. ("MSJ"), ECF No. 67-2).  When LVMPD police officer Defendant Pavlov arrived on scene, he viewed Plaintiff as being aggressive with him. (*Id.* 30:1–12, Ex. C to LVMPD Defs.' MSJ).  At that point, it was Pavlov's impression that South Point had not formally read the trespass card to Plaintiff. (*Id.* 30:9–12, Ex. C to LVMPD Defs.' MSJ).  Pavlov then issued a misdemeanor trespass warning to Plaintiff. (Hoch Decl. ¶ 27–29, Ex. 1 to Pl.'s MPSJ).

Plaintiff now moves for partial summary judgment as to liability for all his claims against Defendants except for his intentional infliction of emotion distress ("IIED") claim.  Defendant

South Point and the LVMPD Defendants each move for full summary judgment on every claim against them.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

1  the claim or defense, the moving party can meet its burden in two ways: (1) by presenting
2  evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating
3  that the nonmoving party failed to make a showing sufficient to establish an element essential
4  to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477
5  U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be
6  denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress*
7  *& Co.*, 398 U.S. 144, 158–60 (1970).

8          If the moving party satisfies its initial burden, the burden then shifts to the opposing
9  party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*
10 *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,
11 the opposing party need not establish a material issue of fact conclusively in its favor.  It is
12 sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
13 parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
14 *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on
15 denials in the pleadings but must produce specific evidence, through affidavits or admissible
16 discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,
17 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical
18 doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The
19 mere existence of a scintilla of evidence in support of the plaintiff's position will be
20 insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid
21 summary judgment by relying solely on conclusory allegations that are unsupported by factual
22 data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go
23 beyond the assertions and allegations of the pleadings and set forth specific facts by producing
24 competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

25

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  <u>DISCUSSION</u>

Plaintiff pled five causes of action in his SAC: (1) False Imprisonment/False Arrest; (2) Defamation; (3) Negligence; (4) IIED; and (5) Violation of 42 U.S.C. § 1983. (*See generally* SAC). Plaintiff moves for partial summary judgment as to liability on his Section 1983 claim against Pavlov and South Point, false imprisonment claim against all Defendants, defamation claim against South Point, and assault and battery claim against South Point. (Pl.'s MPSJ 1:19–24, ECF No. 49). South Point moves for summary judgment on the following claims: false imprisonment/false arrest; defamation; assault and battery; IIED; and violation of Section 1983. (*See generally* South Point's Mot. Summ. J. ("MSJ"), ECF No. 68). The LVMPD Defendants move for summary judgment on false imprisonment/false arrest; IIED; and violation of Section 1983. (*See generally* LVMPD Defs.' MSJ, ECF No. 67).

The Court begins its discussion by addressing the Parties arguments regarding an assault and battery claim. Plaintiff requests summary judgment on an assault and battery cause of action and South Point filed a cross motion for summary judgment on this claim as well. But Plaintiff did not plead a civil cause of action for assault and battery in the SAC, nor any iteration of his complaint.[3] (*See generally* SAC). It is impermissible to add a new claim for the

---

[3] Plaintiff's "Causes of Action" section of his SAC pleads five causes of action, none of which are a claim for assault and battery. (*See* SAC at 8–11). References to battery can be found in the "Jurisdictional and Common Allegations" section of Plaintiff's SAC, where he adds three named Defendants to the action asserting generally that "they were material actors in in seizing (imprisoning) Plaintiff and battering Plaintiff." (*Id*. 2:19–20). Plaintiff also adds another named Defendant who is described as being involved with the "detention, false imprisonment, battery and other torts committed against the Plaintiff." (*Id*. 24–25). But the Parties stipulated to the dismissal of each of those Defendants from this action. (*See* Order Granting Stipulation for Dismissal, ECF

first time at the summary judgment stage. *See Echlin v. PeaceHealth*, 887 F.3d 967, 977–78 (9th Cir. 2018). As such, the Court will not address arguments made regarding an assault and battery claim pled for the first time in Plaintiff's Motion for Partial Summary Judgment. Moreover, neither Plaintiff nor any Defendant addresses the negligence cause of action in their briefing. But in the interest of judicial economy and because the parties will not be unfairly prejudiced, the Court addresses the merits of the negligence claim in this Order.

### A. Preliminary Matters

Before the Court addresses the merits of the Parties' Motions, it first takes up Plaintiff's preliminary arguments.

### 1. Evidentiary Objection

First, Plaintiff contends that South Point's expert report prepared by a South Point security officer is inadmissible hearsay. (Pl.'s MPSJ, 11:16–20); (*See generally* Initial Expert Report of Robert Garnder, Ex. C to South Point's Resp., ECF No. 63-3). "[F]or an expert opinion to be considered on summary judgment, it must be accompanied by a proper affidavit or deposition testimony; courts in the Ninth Circuit have routinely held that unsworn expert reports are inadmissible." *FNBN-RESCON LLC v. Ritter*, 2014 WL 979930, at *5 (D. Nev. Mar. 12, 2014) (citation and internal quotations omitted) (collecting cases); *see also* Fed. R. Civ. P. 56(e); Fed. R. Evid. 603.[4] Defendant South Point's Initial Expert Report is not accompanied by a proper affidavit nor deposition testimony and is unsworn. As such, the Court cannot consider the Initial Expert Report at this stage.

---

No. 44). The rest of Plaintiff's SAC is devoid of any reference to battery and a civil claim for assault and battery cannot be found in the SAC. The Court acknowledges that Plaintiff's negligence claim, however, arises out of a violation of criminal false imprisonment and criminal assault and battery which the Court discusses in more depth below. Accordingly, Plaintiff failed to properly plead a cause of action for civil assault and battery.

[4] A handful of Circuits have likewise held that unsworn expert reports are inadmissible. *See e.g., Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989); *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001); *Wittmer v. Peters*, 87 F.3d 916, 917 (7th Cir.1996).

1                    **2.  Security Camera Video**

2          Second, Plaintiff contends that the events depicted on security camera video footage

3    provided by Plaintiff in Plaintiff's Exhibit 2 are conclusively established and cannot be

4    contradicted by any facts that the Defendants attempt to raise. (Pl.'s MPSJ 9:4–5).  At the

5    summary judgment stage, courts must "view[] the facts in the light depicted by the videotape."

6    *Scott v. Harris*, 550 U.S. 372, 372, 374 (2007).  While events appearing on an authenticated

7    video are "true," that does not mean that a party is foreclosed from presenting evidence to

8    present possible justifications for one's actions. *See People for the Ethical Treatment of*

9    *Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 622 (1995) ("The 'distribution and showing' of

10   the videotape in no way interferes with [defendant's] right to present possible justifications for

11   his actions.  As the distributors of the tape had the right to show this true tape, so [defendant]

12   had the right to explain his actions on the tape.").

13         Plaintiff argues that when considering the nature of the video evidence, the indisputable

14   facts show that Defendant South Point constructed a sham report to support its false narrative of

15   events. (Pl.'s MPSJ 9:25–26).  Here, the video can only be used to conclusively depict what is

16   objectively seen on screen.  And while the Court must view the facts in the light depicted by the

17   videotape, summary judgment is appropriate only if, taking the evidence and all reasonable

18   inferences in the light most favorable to the non-moving party, there are no genuine issues of

19   material fact, and the moving party is entitled to judgment as a matter of law.

20         The video Plaintiff provides is snippets of him inside South Point leading up to the

21   incident where Plaintiff and Defendants had an altercation in the casino. (Security Video at

22   1:35:40, Ex. 2 to Pl.'s MPSJ, manual filing).  However, the Parties are permitted to explain

23   their actions within the video and respond to Plaintiff's position that the video conclusively

24   proves that South Point created a sham incident report.  The Parties' explanations and

25   considering the entire video footage as seen in South Point's Exhibit A establish that Plaintiff is

not entitled to summary judgment, but Defendants are.  By way of example, Plaintiff explains that he was "violently shoved" and "attacked" by numerous security officers. (Pl.'s MPSJ 10:18–25).  But South Point explains that Plaintiff had been non-compliant with the mask mandate and refused to leave the premises and was aggressive and threatening towards the security officers which led to them seizing Plaintiff all of which is evident from the security footage provided by South Point. (South Point's Resp. 6:22–28, ECF No. 63); (*See generally* South Point Security Camera Footage, Ex. A to South Point's Resp.).  Thus, the video fails to establish that summary judgment is appropriate for Plaintiff.

### 3.  Respondent Superior as to South Point

Lastly, Plaintiff argues that the actions of South Point's employees are coextensively the actions of South Point for purposes of this litigation through respondeat superior. (Pl.'s MPSJ 11:10–11).  Defendant South Point provides no response to this argument in either its Response to Plaintiff's Motion for Partial Summary Judgment or in its own Motion for Summary Judgment.  As such, the Court finds that this point is undisputed and accepts Plaintiff's position as true.

### B.  42 U.S.C. § 1983

The Court now turns to the merits of the Parties Motions.  Plaintiff moves for partial summary judgment as to liability on his claim for Defendants violation of 42 U.S.C. § 1983. Defendant South Point and the LVMPD Defendants each move for summary judgment on this claim.  To sustain an action under Section 1983, a plaintiff must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  The Parties do not dispute the first element, so the only question for the Court to address is whether summary judgment is appropriate for any party as

to the second element. (*See generally* Pl.'s MPSJ); (*See generally* South Point's MSJ); (*See generally* LVMPD Defs.' MSJ).

### 1. Plaintiff's Motion

Plaintiff argues that neither South Point nor Pavlov had the legal authority to seize him and thus deprived him of a constitutional right. (Pl.'s MPSJ 12:14–15). Whether Plaintiff was seized is not at issue.[5] The issue is whether Plaintiff's seizure by Defendants was reasonable under the Fourth Amendment. The Court first addresses the reasonableness of South Point's seizure.

### a. Defendant South Point

As mentioned above, South Point does not dispute that it acted under the color of state law, thus the Court need only address the second prong of the Section 1983 analysis.[6] (*See generally* South Point's MSJ); (*See generally* South Point's Resp.). South Point seized Plaintiff for trespassing in violation of NRS § 207.200 and for exhibiting aggressive behavior towards it security officers. (*See generally* South Point Security Camera Footage, Ex. A to South Point's Resp.). Plaintiff argues that this seizure violated his Fourth Amendment rights because it was not supported by probable cause or reasonable suspicion. *See United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983). The Fourth Amendment bars only those searches and seizures that are unreasonable. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 613 (1989). In certain instances, a security officer, like the ones at South Point, can seize an individual and not violate their constitutional right to unreasonable seizure. One such instance is when a security officer conducts a citizen's arrest. NRS § 171.126. Nevada's citizen's arrest statute

---

[5] It is undisputed that Plaintiff was seized, but Defendants dispute *who* seized Plaintiff. South Point asserts that LVMPD seized Plaintiff while LVMPD maintains that South Point seized Plaintiff. (South Point's MSJ 4:3, ECF No. 68); (LVMPD Defs.' MSJ 2:13). However, it is clear from the record that both Defendants seized Plaintiff which is discussed in more detail below.

[6] Even if the Parties did dispute whether South Point acted under the color of state law, the Court would find that the first prong is met. *See generally Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012).

authorizes citizen's arrests for misdemeanors only when a crime has in fact been committed. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1150 (9th Cir. 2012) (citing NRS § 171.126; *Atwater v. City of Lago Vista*, 532 U.S. 318, 352 (2001)). "Misdemeanor trespassing, as defined in NRS § 207.200, is considered a public offense." *Id.* at 698 F.3d 1132 n.4 (internal citations omitted).

Plaintiff argues that summary judgment is warranted because South Point lacked the legal authority to seize Plaintiff to issue a trespass warning because South Point lacked probable cause and/or reasonable suspicion and ultimately did not conduct a citizen's arrest of Plaintiff. (Pl.'s MPSJ 12:14–15); (Pl.'s Reply 2:21–23, ECF No. 72). Indeed, South Point's authorized employee testifies that Plaintiff was not arrested. (Lopez Dep. 42:12, Ex. 7 to Pl.'s PMSJ, ECF No. 49-7). However, "[a]n arrest—or, to use the Fourth Amendment's terminology, a "seizure"—occurs when a law enforcement officer, through coercion, physical force[,] or a show of authority, in some way restricts the liberty of a person." *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004) (quotation omitted). "A person's liberty is restrained when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). Here, South Point handcuffed Plaintiff, walked him to a holding cell far away from the casino floor, searched him, and made him sit in the cell until LVMPD arrived. Under these circumstances, the officers restricted Plaintiff's liberty and seized him, *i.e.* a citizen's arrest occurred despite South Point's contention that it did not arrest Plaintiff. Accordingly, South Point needed probable cause to seize Plaintiff.

Plaintiff argues South Point did not have probable cause to seize Plaintiff, but the record proves otherwise. "Probable cause exists when the [officers] know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed

or was committing an offense.'" *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (quoting *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988)). Moreover, the Supreme Court has held that probable cause is "not a high bar" and depends on the "totality of the circumstances." *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Plaintiff is seen on camera failing to abide by South Point's mask mandate, is asked to leave, refuses to leave, and is then involved in a physical altercation with South Point security. (*See generally* South Point Security Camera Footage, Ex. A to South Point's Resp.); (*See generally* Hoch Decl., Ex. 1 to Pl.'s MPSJ). A sufficient warning against trespassing, within the meaning of NRS 207.200 requires "the owner or occupant of the land or building making an oral or written demand to any guest to vacate the land or building." NRS 207.200. Here, South Point security made an oral demand for Plaintiff to leave the building and Plaintiff did not do so amounting to a sufficient warning by South Point and a trespass by Plaintiff. (*See* Hoch Decl. ¶ 11, Ex. 1 to Pl.'s MPSJ). Based on the totality of the circumstances, South Point had probable cause to seize Plaintiff because Plaintiff had committed or was committing the crime of trespass. Thus, Plaintiff fails to meet his burden of establishing the absence of a genuine dispute of material fact. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to his Section 1983 claim against Defendant South Point is DENIED.

### b.  Defendant Pavlov

The Court now turns to address Plaintiff's Motion as it relates to Pavlov. The Supreme Court has identified three distinct types of police-citizen encounters, each requiring a different level of suspicion to be deemed reasonable under the Fourth Amendment: (1) arrest, which must be supported by probable cause, *Beck v. Ohio*, 379 U.S. 89 (1964); (2) brief investigatory stops ("Terry stops"), which must be supported by reasonable articulable suspicion of criminal activity, *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) consensual encounters between police and citizens, which require no objective justification.

Plaintiff argues that Pavlov did not have the legal authority, whether it be probable cause or reasonable suspicion, to detain Plaintiff and thus Plaintiff's detention was unconstitutional. (Pl.'s MPSJ 12:14–15). Plaintiff points to Pavlov's deposition in which he testified that his sole reason to detain Plaintiff was to issue a trespass warning. (Pavlov Dep. 36:10–25, Ex. C to LVMPD Defs.' Resp.). Plaintiff concludes that by Pavlov's admission, the detention of Plaintiff at a time when he would otherwise be released is not based on probable cause nor reasonable suspicion. (Pl.'s MPSJ 13:11–14). However, Pavlov responded to a call from South Point alerting him that Plaintiff had trespassed on their property which establishes that Pavlov had legal authority to seize Plaintiff. (Pavlov Dep. at 53–54, Ex. C to LVMPD Defs.' MSJ). Thus, Plaintiff's arguments and offering of evidence fail to establish the absence of a genuine dispute of material fact. As such, Plaintiff's Motion for Partial Summary Judgment as to his Section 1983 claim against Pavlov is DENIED.

### 2. Defendant South Point's Motion

Because the Court finds that South Point had the legal authority to seize Plaintiff and denied Plaintiff's Motion for Partial Summary Judgment for his Section 1983 claim, the Court GRANTS South Point's Motion for Summary Judgment for this claim.

### 3. The LVMPD Defendants' Motion

The LVMPD Defendants move for summary judgment on Plaintiff's Section 1983 claim. Defendants Pavlov and LVMPD do not dispute that they acted under the color of state law. As a result, the only questions are whether Pavlov violated Plaintiff's rights, whether Pavlov is entitled to qualified immunity, and whether LVMPD can be held liable for any violations through *Monell* liability.

### a. Whether a Violation of Rights Occurred

The LVMPD Defendants argue that their Motion for Summary Judgment should be granted for the same reasons they argued that Plaintiff's Motion for Partial Summary Judgment

1    should be denied.  Pavlov presents two arguments for the Court to consider as to the Section

2    1983 claim.  First, he argues that a reasonable jury could conclude that he did not seize

3    Plaintiff. (LVMPD Defs.' MSJ 5:12–13).  And second, in the alternative to his first argument,

4    he contends that Defendant Pavlov had reasonable suspicion to encounter Plaintiff. (*Id.* 7:4–5).

5        Pavlov argues that a reasonable jury could conclude that he did not seize Plaintiff.

6    (LVMPD Defs.' MSJ 5:12–13).  To reiterate, "[a] seizure occurs when a law enforcement

7    officer, through coercion, 'physical force[,] or a show of authority, in some way restricts the

8    liberty of a person.'" *Washington*, 387 F.3d at 1068 (citing *Chan–Jimenez*, 125 F.3d at 1325).

9    "A person's liberty is restrained when, 'taking into account all of the circumstances

10    surrounding the encounter, the police conduct would have communicated to a reasonable

11    person that he was not at liberty to ignore the police presence and go about his business.'" *Id.*

12    (citing *Bostick*, 501 U.S. at 437).  "[A] seizure does not occur simply because a police officer

13    approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434.  A seizure

14    through a show of authority occurs where "if, in view of all the circumstances surrounding the

15    incident, a reasonable person would. . . believe that he [is] not free to leave." *California v.*

16    *Hodari D.*, 499 U.S. 621, 626 (1991) (quotation omitted).  An officer may briefly seize a

17    suspect *to maintain the status quo* while investigating criminal activity. *Michigan v. Summers*,

18    452 U.S. 692, 698 (1981) (citation omitted) (emphasis added).

19        The LVMPD Defendants argue that while it is true that Plaintiff was seized by South

20    Point and that Plaintiff reasonably believed that he was not free to leave, that belief was not a

21    result of Pavlov's actions. (LVMPD Defs.' MSJ 6:19–20).  They further argue that Pavlov's

22    arrival on scene "changed nothing"—or in other words, the status quo was maintained—

23    because South Point continued custody over Plaintiff. (*Id.* 6:20–22).  Essentially, the LVMPD

24    Defendants argue that because Plaintiff was previously seized by South Point, Pavlov did not

25    participate in Plaintiff's seizure by issuing the misdemeanor trespass warning. (*Id.*).

The Court disagrees.  When an officer, as is the case here, briefly detains a suspect to maintain the status quo while investigating criminal activity, a seizure has occurred. *Summers*, 452 U.S. at 698.  Here, Pavlov arrives on the scene to respond to a potential trespass. (Pavlov Dep. at 53–54, Ex. C to LVMPD Defs.' MSJ).  He assesses whether Plaintiff is a threat to himself and others and determines that the handcuffs South Point placed on Plaintiff can be removed. (*Id.* 30:2–4).  Pavlov then decides that Plaintiff should receive a misdemeanor trespass warning. (*Id.* 30:9–12).  He testifies that Plaintiff is being detained so that he can issue the misdemeanor trespass warning which establishes that Pavlov participated in Plaintiff's seizure. (*Id.* 36:10–25, Ex. C to LVMPD Defs.' Resp.).  Moreover, despite the fact that Pavlov removed the handcuffs South Point had placed on Plaintiff, a reasonable person would still not feel "at liberty to ignore [Pavlov's] presence and go about his business" because Plaintiff was still being held in a cell and Pavlov was issuing a citation to Plaintiff. (Pavlov BWC Footage at 2:14, Ex. B to LVMPD Defs.' MSJ, manual filing); *Bostick*, 501 U.S. at 437.  Thus, based on the totality of the circumstances and Pavlov's own testimony Defendant has failed to meet his burden of establishing he did not seize Plaintiff.

Because Pavlov seized Plaintiff, the seizure must be considered reasonable as to not run afoul to the Fourth Amendment. *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) ("The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest.")).  An investigative detention, like the one here, require less than probable cause. *See generally Terry v. Ohio*, 392 U.S. 1 (1968).  Police must have a reasonable suspicion supported by articulable facts of criminal activity or involvement in a completed crime in order for an investigative detention to be considered reasonable under the Fourth Amendment. *Id*. at 21.  The standard for reasonable suspicion is low, requiring merely that an officer "be able to articulate more than a. . . 'hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 124

(2000) (quotation omitted). Moreover, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida. v. Royer*, 460 U.S. 491, 500 (1983). "Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id*. (citations omitted). Consequently, to determine whether a seizure is unreasonable, the Court considers both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20.

The LVMPD Defendants meet their initial burden of establishing that Pavlov had reasonable suspicion to conduct an investigative detention of Plaintiff. The LVMPD Defendants explain that Pavlov responded to South Point to issue a misdemeanor trespass warning against Plaintiff. (Pavlov Dep. at 53–54, Ex. C to LVMPD Defs.' MSJ). When Pavlov arrived at the scene, Plaintiff was "aggressive" and was "being aggressive with [Pavlov]." (*Id.* 30:2–4, Ex. C to LVMPD Defs.' MSJ). This is further evidenced in Pavlov's body worn camera ("BWC") footage, where, upon contacting Plaintiff, Pavlov attempts to calm Plaintiff as he talks over Pavlov. (Pavlov BWC Footage at 2:14, Ex. B to LVMPD Defs.' MSJ, manual filing). Plaintiff agrees to speak calmly and to not interrupt Pavlov, but then proceeds to talk over him again. (*Id.* at 2:45, Ex. B to LVMPD Defs.' MSJ). Plaintiff continues to talk over Pavlov, including tossing expletives at South Point security personnel, as he explains the situation further. (*Id*. at 3:00, Ex. B to LVMPD Defs.' MSJ). Therefore, between the call Pavlov received regarding Plaintiff's trespass and Plaintiff's actions towards Pavlov when he arrived at South Point the Court finds that Pavlov could articulate more than just a hunch of criminal activity. Thus, the LVMPD Defendants have met their initial burden of negating an essential element of Plaintiff's Section 1983 claim.

1    Now the Court turns to whether Plaintiff can establish that a genuine dispute of material

2   fact exists.  As discussed above, Pavlov admits that his reason for detaining Plaintiff was to

3   issue a trespass warning and he assumed that South Point had already read the trespass card to

4   Plaintiff. (Pavlov Dep. 30:9–12, Ex. C to LVMPD Defs.' MSJ).  But Plaintiff maintains that he

5   was not read the trespass card until Pavlov arrived. (Hoch Decl. ¶ 27–29, Ex. 1 to Pl.'s MPSJ).

6   Plaintiff thus argues that, beyond the mere issuing of the warning, Pavlov lacked the legal

7   authority to maintain Plaintiff's seizure because it was not evident at the time of Pavlov's

8   arrival that Plaintiff had committed the crime of trespass. (Pl.'s MPSJ 13:3–18).

9    Indeed, Pavlov testified that he did not formally investigate whether Plaintiff had

10   committed a crime. (Pavlov Dep. 33:14–16, Ex. C to LVMPD Defs.' Resp.).  Moreover, Pavlov

11   admits that when he arrived on the scene, Plaintiff had not yet been read a trespass card. (*Id.*

12   30:9–12, Ex. C to LVMPD Defs.' Resp).  But as previously discussed, a sufficient warning

13   against trespassing, within the meaning of NRS 207.200 requires "the owner or occupant of the

14   land or building making an oral or written demand to any guest to vacate the land or building."

15   NRS 207.200.  Here, South Point security made an oral demand for Plaintiff to leave the

16   building and Plaintiff did not do so amounting to a sufficient warning. (*See* Hoch Decl. ¶ 11,

17   Ex. 1 to Pl.'s MPSJ).  The Court must look to the objective evidence of what Defendant Pavlov

18   knew at the time, which is that Pavlov responded to a call from South Point alleging Plaintiff

19   had trespassed because he was asked to leave South Point and did not, arrived at the scene to an

20   aggressive Plaintiff, and therefore issued a misdemeanor trespass warning. *Reynaga Hernandez*

21   *v. Skinner*, 969 F.3d 930, 940 (9th Cir. 2020) (explaining that whether a Fourth Amendment

22   violation occurred is an objective inquiry, not subjective).  The Court finds that Pavlov's

23   actions were justified at their inception, and that they were reasonably related in scope to the

24   circumstances which justified the interference in the first place. *See Terry*, 392 U.S. at 19–20.

25   Accordingly, Plaintiff's offering of evidence and arguments fails to establish that there exists a

genuine dispute of material fact as to whether Defendant Pavlov had the legal authority to seize Plaintiff.

### b. Qualified Immunity

Lastly, and in the alternative, the LVMPD Defendants argue that Pavlov is entitled to qualified immunity because Pavlov did not violate Plaintiff's constitutional rights, and if Pavlov's actions do amount to a constitutional violation, the violation was not clearly established. (*See* LVMPD Defs.' MSJ at 10–16). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"). To overcome a claim of immunity, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735.

As discussed above, there is not a genuine dispute of material fact as to whether Pavlov violated Plaintiff's constitutional right to be free from unreasonable seizure, therefore negating prong one of the qualified immunity analysis. Thus, Pavlov is entitled to qualified immunity.

### c. *Monell* Liability

Plaintiff seeks to hold LVMPD liable for Pavlov's actions under the theory of *Monell* Liability. Pursuant to *Monell*, municipalities can be sued directly under Section 1983 for violations of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But here, there is not a genuine dispute of material fact as to whether Pavlov

violated Plaintiff's Fourth Amendment rights. Thus, Plaintiff cannot succeed on his *Monell* claim against LVMPD.

In conclusion, the LVMPD Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim is GRANTED because there exists no genuine dispute of material fact as to (1) whether Pavlov had legal authority to detain Plaintiff, (2) whether Pavlov is entitled to qualified immunity; and (3) whether LVMPD is liable for Defendant Pavlov's action through *Monell* liability.

### C. False Imprisonment

Plaintiff moves for partial summary judgment as to liability for his false imprisonment claim against South Point and Pavlov. (Pl.'s MPSJ 17:8–19:7.) South Point and the LVMPD Defendants both filed Motions for Summary Judgment on this claim, arguing that they had legal authority to seize Plaintiff which negates his claim for false imprisonment.

False imprisonment occurs when a person is detained under force or threat of force without legal justification. *Lerner Shops v. Marin*, 423 P.2d 398, 400 (Nev. 1967). "To establish false imprisonment of which false arrest is an integral part, it is only necessary to prove that the [plaintiff was] restrained of his liberty under the probable imminence of force without any legal cause or justification." *Marschall v. City of Carson*, 464 P.2d 494, 498 (Nev. 1970). Legal cause thus bars false imprisonment. *Grover v. Clark Cnty.*, 625 P.2d 85, 86 (Nev. 1981).

As discussed above, both South Point and Pavlov had the legal authority to seize Plaintiff. Because legal cause bars success on a false imprisonment claim, Plaintiff cannot succeed on his Motion for Partial Summary Judgment as to this claim against Defendants. Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED as to this claim. South Point's Motion for Summary Judgment is GRANTED. The LVMPD Defendants' Motion for Summary Judgment is likewise GRANTED.

### D. Defamation

Plaintiff moves for partial summary judgment as to liability for his defamation claim against South Point. (Pl.'s MPSJ 20:15–17). South Point moves for summary judgment on this claim. (South Point's MSJ 5:14–6:2).

To succeed on a claim for defamation in Nevada, a plaintiff must demonstrate: (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005). Because Nevada adopts defamation by pantomime as an actionable intentional tort, the first element of a defamation claim can be satisfied by conduct as well as words or a combination of both. *K-Mart Corp. v. Washington*, 866 P.2d 274, 276, 282 (Nev. 1993); *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (explaining that the imputation of wrongdoing by pantomime, *i.e.* walking a person in public in handcuffs, if communicated to a third party, is unquestionably slander per se). However, the clear defense to defamation in this case turns on whether there was in fact a legal basis to detain Plaintiff. *Id.* at 1149.

As mentioned throughout this Order, South Point had the legal authority to seize Plaintiff which establishes that South Point has a clear defense to defamation in this case. Thus, Plaintiff's Motion for Partial Summary Judgment is DENIED as to this claim. South Point's Motion for Summary Judgment for the defamation claim is GRANTED.

### E. IIED

South Point and the LVMPD Defendants move for summary judgment on Plaintiff's IIED claim. Plaintiff does not move for summary judgment on this claim.

To prevail on a claim for IIED under Nevada law, a plaintiff must show: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual

or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). The Nevada Supreme Court has defined "extreme and outrageous conduct" as that which is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). However, "persons must necessarily be expected and required to be hardened to . . . occasional acts that are definitely inconsiderate and unkind." *Id*. (omission and quotation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

Defendants' Motions for Summary Judgment present substantially similar arguments for why summary judgment should be granted in their favor as to Plaintiff's IIED claim. As for the first element, South Point contends that there is no evidence that Plaintiff's seizure for alleged criminal conduct is extreme and outrageous. (South Point's MSJ 6:8–9). Similarly, the LVMPD Defendants argue that there is no evidence that their conduct in responding to a call for service and issuing a written trespass warning is extreme and outrageous. (LVMPD Defs.' MSJ 19:25–20:5). Second, Defendants argue that there is no evidence that they intended to cause, or had a reckless disregard for causing, Plaintiff emotional distress. (South Point's MSJ 6:8–12); (LVMPD Defs.' MSJ 20:7–9). Lastly, they assert that there is no evidence that demonstrates Plaintiff actually suffered emotional distress subsequent to this incident. (South Point's MSJ 6:12–16); (LVMPD Defs.' MSJ 20:9–10).

The Nevada Supreme Court has defined "extreme and outrageous conduct" as that which is "outside all possible bounds of decency" and is regarded as "utterly intolerable in a civilized

community." *Maduike*, 953 P.2d at 26.  Moreover, a police officer's conduct may rise to the level of extreme and outrageous when he engages in an "extreme abuse" of his position. Restatement (Second) of Torts § 46, cmts.  South Point's security officers and LVMPD, as a law enforcement agency, are certainly expected to monitor and respond to criminal activity. Thus, the fact that South Point had the legal authority to seize Plaintiff and LVMPD responded to a call for service, also had the legal authority to seize Plaintiff, and issued a written warning is not enough to constitute "extreme and outrageous conduct" for purposes of an IIED claim. *See e.g. Cornel v. Hawaii*, 501 F. Supp. 3d 927 (D. Haw. 2020), *aff'd*, 37 F.4th 527 (9th Cir. 2022) ("But given that [plaintiff's] arrest was valid and lawful, nothing can be considered "outrageous" for purposes of IIED.").  Furthermore, because Pavlov had legal authority to seize Plaintiff it cannot be said that he engaged in an "extreme abuse" of his position.  Thus, Defendants have met their initial burden of negating an essential element of Plaintiff's IIED claim.

Plaintiff cannot meet his burden of establishing a genuine dispute of material fact because, as discussed above, Plaintiff did not succeed in establishing a genuine dispute of material fact as to whether Defendants had legal authority to seize him which is the basis for his IIED claim.  Accordingly, South Point's Motion for Summary Judgment for IIED is GRANTED.  Likewise, the LVMPD Defendants' Motion for Summary Judgment as to this claim is also GRANTED.

### F.  Negligence

Plaintiff asserts a claim for negligence per se against the Defendants for violation of NRS 200.460, criminal false imprisonment, and NRS 200.481, criminal assault and battery. (*See* SAC ¶52–58).  Plaintiff ultimately bases the negligence claim on his seizure. (*See id.*). But the claim cannot survive summary judgment because the seizure was based on probable cause and thus did not violate NRS 200.460 nor NRS 200.481. *Scotti v. City of Phoenix*, 609 F.

App'x 386, 389 (9th Cir. 2015) (independent probable cause negates state law negligence claims).  Accordingly, summary judgment is appropriate for Defendants on this claim.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 49), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant South Point's Motion for Summary Judgment, (ECF No. 68), is **GRANTED**.

**IT IS FURTHER ORDERED** that the LVMPD Defendants' Motion for Summary Judgment, (ECF No. 67), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine, (ECF No. 45), is **DENIED**.

 **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 57), is **DENIED**.

The Clerk of Court is kindly directed to enter judgment in favor of Defendants and close the case.

**DATED** this ___24___ day of February, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court